Case number 19-7079. Melissa Stanley, individually and as representative of a class of participants and beneficiaries, on behalf of the George Washington University Retirement Plan for Faculty and Staff and the George Washington University Supplemental Retirement Plan Appellant v. George Washington University et al. Mr. Schwartz for the Appellants and Mr. Netter for the Appellees. Good morning. Good morning, Judge Rogers. Good morning, members of the Court. May it please the Court, my name is Steve Schwartz. I represent Melissa Stanley, the Plaintiff. I would like to reserve three minutes for rebuttal, please. The District Court's decision was incorrect because it failed to properly apply the well-established standards for contract construction, failed to appreciate the limits of a Rule 12 analysis, and it failed to appreciate the real legal holdings and the key factual distinctions on the key cases, the Bachman case and the Grieger case, which support my position, and the cases that the Court relied on, the Howe case, SunTrust, and the Stargill case. And I think the District Court fell into the trap of failing to ask itself two fundamental questions which would have framed its analysis. The first question the Court should have asked itself is, what is the nexus between the claims that we have brought in the case, the specific claims, and the vested benefits that are part of the carve-out of the release? And it turns out the nexus between those two is so close it's like they were bonded by Gorilla Glue. The claims we brought in this case were that the trustees paid excessive fees, needlessly, for record-keeping services and for index funds. And as a result of that, every dollar of excessive fees that the trustees paid, or the plan paid, was $1 less in the approved benefits account of Ms. Stanley and the other plan participants. Which is just to say that the claims you brought were for breach of fiduciary duties. No, it's not the same. I would disagree respectfully because there are many claims for breach of fiduciary duty that don't have that very close nexus. And so there could be a breach of fiduciary duty. For example, Ms. Stanley had brought a sex discrimination claim. That was what the original release was about. If there's a breach of fiduciary duty because trustees... A breach of fiduciary duty claim involving asset management. Well, this is why I think there's a big distinction between Bachman and Brieger on the one hand and Howe, SunTrust, and Stargell on the other hand. The nexus to our case is a direct dollar-for-dollar nexus. In Stargell, in Howe, SunTrust, the claim was the trustees gave the plan participants, the Motorola and SunTrust employees, the choice of investing in either Motorola or SunTrust stock. So it was a diversification claim and a claim that there should have been a disclosure that Motorola stock was going to tank because they had entered into some bad transaction. The nexus between those claims and the amount of money in the benefits accounts of those plaintiffs was very attenuated. The claims here are tightly dollar-for-dollar relationship, and that's why in Bachman where the same exact claim was brought, the court reached a different result. Not because there was a different law going around or a different analysis, but the nexus was very close. The other thing that's very important is the claim is that the plan trustees didn't perform as well as they should have in whatever management, investment decisions, and the like. And as a result, there was less money in the plan for the beneficiaries. If you look at that at the 10,000-foot level, that's one way to describe it, but I think there's a difference between a dollar-for-dollar nexus where you literally paid money for the retail version of an index fund when a jumbo multi-billion dollar plan like GW could have just simply gotten the institutional, the same exact index fund run by the same people at Vanguard, but the costs are lower because you're a bigger investor. That is a very tight nexus. The claims which were general breach of fiduciary duties in Stargell and SunTrust and Howe, very different. I'd also point out in all of those cases, those cases were decided on summary judgment where the court actually looked at evidence that was presented to the court to help it answer the question would the plaintiff have reasonably understood the contract, the release, to have released these types of claims. So there's an additional distinction of those cases which the district court relied on and nowhere does the district court even recognize that those cases were summary judgment cases and instead the district court here made its decision on a Rule 12 motion to dismiss. And that kind of brings up the second question I think that the court should have asked itself, which is if the GW lawyers who drafted this language really intended to permit individual A1 denial of benefits claims, but to prohibit A2 or A3 fiduciary claims brought on half of the plan, why did these lawyers write the release the way they did? Unless they're the worst lawyers in the world, and I don't think that's the case. Why? That's only if you think it's ambiguous. It excludes claims for vested benefits under employee benefit plans. A1 applies to recover benefits due to him under the terms of his plan. It seemed like a pretty close match. That's the one thing that you're allowed to sue under under this release. It doesn't seem very hard or ambiguous or bad lawyering. Well, first of all, virtually the same language was in Bachman and the court went the other way. Well, that's fine for that court. It's not enough to say that another court went another way. You have to tell me why that language isn't a pretty good matchup for the exclusion that GW is claiming here. It's not a good matchup because, first of all, it did not include ERISA in the specific list of statutes. But it said all, any federal, state, or local statute. Is ERISA a federal statute? Yes, and if the clause ended there, of course, I would lose. But in HAL, the reason why the HAL court had to figure out this distinction between A1 and A2 and A3 claims was there was ERISA in the specific list of statutes. It says including but not limited to. I don't know how much broader it could be than including any federal statute, including but not limited, and then this number of statutes which don't include ERISA, but it says it's including but not limited. Judge Garland, the carve-out for vested benefits necessarily means not all of ERISA is excluded. That's right. That's the point of a carve-out. And then the carve-out explains which part isn't, and the match to A1B is pretty close. No, I don't believe it's close because, first of all, obviously not all of ERISA is excluded. That's why the vested benefits are part of the carve-out. And the only interpretations we have of vested benefits, because that's not a defined term under ERISA. Accrued benefits is a defined term. The only definitions we have are forced court of appeals decisions that the drafters of this language knew about when they drafted it two years ago that said claims for vested benefits include claims for breach of fiduciary duty. That impact the amount of benefits that you have. That's the Breger case. And so given that the definition of vested benefits was out there by four courts of appeals, it would not have been reasonable for Melissa Stanley to have known that claims that were being excluded were every single breach of fiduciary duty claim. So claims for vested benefits under the plan. Correct. And wouldn't any competent lawyer with even a passing familiarity of ERISA understand that the basic statutory architecture is there are claims for benefits, which are A1B claims, and there are fiduciary duty claims, which are purely statutory. It's just a basic divide in the statute. I respectfully disagree. The Supreme Court and all the courts have held that the same facts can support a claim for the denial of benefits, both under A1 and A2. Sure, but the claims are different, right? Well, they're sometimes different. They're sometimes not. The claim ERISA drafts itself as a term of every single pension plan. So no matter what the pension plan says, ERISA is part of the term. This report here did not have the plan document, has no clue what is in that plan document. And, in fact, if we ever got to discovery, we would show that the plan document actually incorporates a prudent man standard that the trustees have to comply themselves with. And if I were drafting this language, if any competent lawyer were drafting this language and wanted to exclude A2, A3 claims on behalf of the plan, they would have had those words, the four words that were only excluding claims in the carve-out that are on Ms. Stanley's own behalf. There was no distinction between claims made on behalf of the plan and claims made on Ms. Stanley's own behalf. And the Supreme Court has held they can have a claim for benefits, even if it only affects you as an individual, in terms of the amount of benefits, even under breach of fiduciary duty under 824. I have a question. A1B claims can't be released by private agreement, right? They can't be forfeited. That's correct. But A2 and A3 claims can be forfeited. They can be forfeited in the context of a specific dispute because there's a rule that you've got to be able to settle cases. But those kinds of waivers of claims are narrowly construed. That's the Breger case. That's fine. But so the very last line of the release that lists the exclusions says claims for vested benefits under employee benefit plans and any other claim which cannot be released by private agreement as a matter of law. Isn't that another indication that the claims for vested benefits is one of the kinds that cannot be released by private agreement and therefore it's an A1B claim? No. I disagree with that too, respectfully, because the concept of settling breach of fiduciary duty claims is you have an active dispute and you have to have a resolution. Otherwise, you're forced to go to trial to the end of the world. There was no active dispute at that time that Ms. Stanley had regarding these expenses because she had no clue about it at that time. So I disagree that that second part of the sentence that you read would somehow limit the broad use of the word vested benefits that was used in the release. I see my time is up, so thank you. Good morning, Your Honors. May it please the Court. Brian Netter for the George Washington University and Associated Defendants. To pick up on Judge Garland's point, Plaintiff Melissa Stanley agreed to release her claims against GW to the fullest extent permitted by law. The exceptions appear in a sentence that indicates that the only things accepted from this release are those claims that cannot be released by private agreement as a matter of law. Judge Bates correctly interpreted this release to determine that the claims brought in this lawsuit are not the sort of non-forfeitable claims that cannot be released, and as such, Ms. Stanley cannot proceed with this lawsuit. Now, my adversary focused much of his argument here on the question of whether this is a claim for vested benefits, but that's not an issue that Judge Bates found needed to be reached in order to resolve this case. We think that, like Judge Bates, the easiest way to resolve this case is through a two-step approach. First, ERISA claims are subject to the general release in the first instance because ERISA is a federal statute, and second, the claims for breach of fiduciary duty are not subject to the CARB Act because they are not claims under employee benefit plans, and therefore, they've been released, and that can be the end of the case. Now, in the reply brief, Ms. Stanley basically concedes the case in our view by acknowledging that if the exclusion covered, quote, then she would be out of luck. That parsing of a distinction between claims under the plan and claims under the plan document, it doesn't make any sense because under ERISA, the plan and the plan document are one and the same. When ERISA provides that certain restrictions apply to the phrasing of the plan's written instrument, it refers to what must be in ERISA's plan. What do you do with your opponent's argument that the plan must, by operation of law, incorporate ERISA, and so you could think of the obligation to comply with fiduciary standards as part of the plan? I think, Your Honor, that this release has to be read in full, and given how many times this release emphasizes that any and all claims are being released of any nature whatsoever to the fullest extent permitted by law, the most appropriate distinction, the most important question to ask is, is this a claim that can be released or is it a claim that cannot be released? And there's no authority for what I believe our adversary to be suggesting, that you could only settle breach of fiduciary duty claims once they've been filed. That's not something that is supported by the case law. To the contrary, it's true that GW could not have used this separation agreement to seize Ms. Stanley's 401k plan account. That's what this provision is designed to protect for Ms. Stanley. She had a balance in her 401k. When she wants to withdraw that balance, the money's going to be there. ERISA says that her vested benefit's non-forfeitable, and that has to be protected in a release. But going beyond that and creating an additional exception for claims that can be settled, there's no logical reason why a release would do that. And given the terms that the parties used in this language, and Ms. Stanley acknowledged in the release that she had consulted counsel, the only way to interpret this release is that if claims were forfeitable, and breach of fiduciary duty claims are forfeitable, then they have been released. Now, to the point that Your Honor was just raising, there is one case that I think strongly supports our interpretation. This is a case from the late Judge Kravitz in Amara v. Cigna Corp. out of the District of Connecticut, a case that ultimately made it to the Supreme Court but on a totally unrelated issue. And that was a case in which Judge Kravitz found that the release drafted by Cigna did not cover the plaintiff's claim. But the phrasing that he used, I think, is indicative of what's at issue here. Cigna drafted the release language and certainly could have limited the exception, the carve-out, such as the carve-out here, to claims for benefits under the plan only and not under ERISA. That's what we have here. We have a carve-out that is limited to claims under the plan. But Ms. Stanley is not bringing claims under the plan. Now, there were some new arguments that don't appear in the briefs that I do want to address, that my adversary brought up here in oral argument. The suggestion that there is some closer nexus between the participant plan accounts here than in the other cases, which mostly arise in the stock drop context, is just simply not true. I would draw the Court's attention to Count 2 of the complaint, which makes allegations for performance losses. The earlier cases arose in the context of participants saying that a company should not have offered its own company's stock as an option on the 401k plan line-up. And the allegation was, if you had not offered company stock, you would have given me a different option, my plan account would have performed better. It's the same kind of dollar-for-dollar relationship. And here, there are particular investment options that Ms. Stanley is claiming should not have been offered in the plan in Count 2. They're indistinguishable. In any event, all of these cases turn not on the nature of the underlying claims. They turn on the phrasing of the contracts. We discussed in the brief why we believe that the district court decisions in the Seventh Circuit can't survive the Seventh Circuit's own decision in Howell v. Motorola, but it's probably worthwhile to focus on the fact that even if the case that I'll pronounce Beckman were still good law, it has sufficiently different contract language than the language we have here. The exclusion in the Beckman case was for claims with respect to any benefits in which you have a vested interest. It wasn't for claims under the plan for those vested benefits. It seems, on its face, to be a broader release. On the other hand, the release in the Motorola case, which is the binding law in the Seventh Circuit, refers only to claims for benefits under the plan, not claims for vested benefits. So if the exception for claims for benefits under the plan did not support a breach of fiduciary lawsuit in the Motorola case, then necessarily, if we were in the Seventh Circuit, then Ms. Stanley's claim wouldn't have survived there either. So we don't think that the two pre-Motorola cases that the plaintiffs have been able to identify really carry any water for them here. So as we have indicated, the cleanest way for this case to be resolved is to follow the roadmap that Judge Bates has articulated. Claims under ERISA are subject to the terms of general release. Claims for breach of fiduciary duty, because they are forfeitable, are not within this narrow exception to an otherwise broad release. If we had to go on to the vested issue, is opposing counsel correct that the vested benefit in the plan would include an amount that's not in your account but you might get back later by challenging a fiduciary violation? He's not, Your Honor. We cite a number of examples in our brief of instances in which ERISA uses the term vested benefits in a matter that is entirely inconsistent with the plaintiff's approach here. One such example is that the plan fiduciaries are required to make certain disclosures of the sum of the participants' vested benefits. That makes sense if vested benefits means their account balances. It doesn't make any sense if it means the value of any future claim for breach of fiduciary duty that could in the future result in additional funds being added to their account balances that could subsequently be converted into benefits. It just doesn't make any sense. And that's another indication that vested benefits can't mean what the plaintiff suggests. I would also draw the Court's attention to, let's see, 29 U.S.C. Section 1002.25, in which Congress defined the term vested liabilities. Congress said the term vested liabilities means the present value of the immediate or deferred benefits available at normal retirement age for participants and their beneficiaries, which are non-forfeitable. Again, drawing the connection between vested benefits, availability under the plan, and non-forfeitability, which is all consistent with the party's contractual language. Releases, like other contracts, are supposed to be read as a whole in their entirety in order to effectuate the objective intent of the parties. Here, given the party's expressed intent to release claims to the fullest extent permitted by law, the only reasonable interpretation of the contractual language is the interpretation adopted by the District Court. We would ask the Court to affirm. District Court dismissed for lack of jurisdiction under 12b.1. You're fighting about the scope of a release, which in my view has nothing to do with understanding or mootness. Is there any reason why we can't just treat that as if it were a merits dismissal under Rule 12b.6 and affirm it on that basis if we agree with you? So, Your Honor, we think there is case law to support the notion that if a plaintiff has released her claims that she lacks Article III standing. The defendant wins on the merits and therefore the plaintiff lacks standing. I mean, that's not right. Well, since there are... The plaintiff has claimed an Article III injury. Right, Your Honor, so... She wants more money from the plan. I mean, she might not have a good claim if your interpretation of the release is right, but that doesn't mean she lacks Article III standing. Well, so a claim can be mooted, Your Honor, by a settlement, and that is effectively what's happening here. If a claim is pre-settled through a release... The question is whether there's a settlement. You can likewise... If somebody sues on a contract, you can say, well, they didn't actually have a contract, so they have no standing. But first you have to determine whether they have a contract. So that's really a merits question, and I don't see why that merits question is any different than the release merits question. Well, Your Honor, I suppose it's a question of staging and not a question... For GW's purposes, so long as the case is dismissed and so long as the release is effectuated, whether that's characterized as a 12B1 or a 12B6 ruling is not entirely important. At the district court phase, we cited authorities to the effect that the defendant can introduce a release so long as the plaintiff doesn't object to that introduction so that it can be resolved at the outset. Now, we do think that because a contract could be interpreted as a matter of law and because there's no dispute that this was a validly signed contract, that it was appropriate to treat it as a matter of standing because a plaintiff can't seek redress if she's already settled her claim. If the court were to determine that it instead wanted to treat that as a merits issue to be resolved at the outset, that, again, isn't something that would affect GW's interests.  Thank you, Your Honor. Counsel Berkowitz. Thank you, Your Honor. Very quickly, in LaRue, and the district court cited this, the Supreme Court held that an individual plan participant may bring a breach of fiduciary duty claim on behalf of the plan under Section A2 to, quote, recover for fiduciary breaches that impaired the value of plan assets in her individual account. Similarly, in the Grieger case, the court basically made the same exact statement and that even at this stage on summary judgment, there's no basis to determine on the present record that any signatory would have understood the release that expressly accepted claims for vested benefits to bar a claim that the signatory received a lower level of vested benefits as a result of defendant's fiduciary breaches. Just reading quotes from the cases, that is why that a carve-out that preserves vested benefits claims, while maybe they can be brought as A1 claims depending on what the nature of the contract says, and we have no clue what the contract says because it's not on the record, can't be brought as a breach of fiduciary duty claim on behalf of the plan. And nothing in this release makes it clear or even says that Ms. Stanley can only bring claims on her own behalf. And it would have been very easy for the drafters to add those forwards if they wanted to be clear. And I certainly don't think the standard for a lawyer is that if you have cases that say this type of language is going to preserve a claim, you can just play Russian roulette and track that language and hope a court will interpret it the way maybe some other case might interpret it, even though the Howe case, for example, said that it was limited to the particular facts and particular circumstances of that case. There was no broad pronouncement of law in that case, and it certainly never said, I'm going to sub salento overrule Rieger and Beckman. Thank you very much.
judges: Rogers, Garland, Katsas